**Denise JARRETT, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**PANASONIC CORPORATION OF NORTH AMERICA; Sanyo North America Corporation; Sanyo Manufacturing Corporation; Wal–Mart Stores, Inc.; and Wal–Mart Stores Arkansas, L.L.C., Defendants.**

No. 4:12–CV–00739–SWW.

United States District Court, E.D. Arkansas, Western Division.

Signed June 21, 2013.

Andrew J. Cross, Jacob A. Flint, James J. Rosemergy, Jeffrey J. Lowe, Carey, Danis & Lowe L.L.C., St. Louis, MO, Susan E. Burgess, Thomas G. Buchanan, III, Law Office of Thomas G. Buchanan, Little Rock, AR, for Plaintiff.

## OPINION AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

Plaintiff Denise Jarrett brings this proposed class action against Defendants Sanyo Manufacturing Corporation (Sanyo), Wal–Mart Stores, Inc., and Wal–Mart Stores Arkansas, L.L.C. (collectively, Wal–Mart), alleging the Defendants designed, manufactured, distributed or sold defective 42″ and 46″ Sanyo plasma televisions.[1] Plaintiff filed her action in the Circuit Court of Pulaski County, Arkansas, but it was removed to this Court by Defendants under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d).[2]

---

1. Defendants Panasonic Corporation of North America and Sanyo North America Corporation were recently dismissed from this action by way of a joint stipulated dismissal without prejudice [doc. # 's 46 & 49]

Now before the Court is Defendants' motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) [doc. # 38]. Plaintiff has responded in opposition to Defendants' motion and Defendants have filed a reply to Plaintiff's response. For the reasons that follow, the Court grants in part and denies in part Defendants' motion for judgment on the pleadings.

## I.

Plaintiff claims that in November 2010 she purchased a 46″ Sanyo plasma television at a Wal–Mart store in Little Rock, Arkansas, but that in October 2011, the television began to malfunction, losing partial picture resulting in the right side of the screen becoming black. Compl. ¶¶ 17–18. Plaintiff claims "[t]he 42″ and 46″ Sanyo plasma televisions have a design defect causing the screen to flicker, lose picture intermittently, lose full picture and/or lose full picture and sound, sometimes within hours of purchase." Compl. ¶ 6. Plaintiff claims the defect she experienced is "widespread and systemic across the United States" and that "[d]espite longstanding knowledge of the problems," Defendants have purposely concealed, suppressed, and omitted to disclose to consumers that its 42″ and 46″ Sanyo plasma televisions are defectively designed. Compl. ¶¶ 7, 20. Plaintiff asserts the following claims against Defendants: Count I—Breach of Implied Warranty of Merchantability; Count II—Violation of the Arkansas Deceptive Trade Practices Act (ADTPA), Ark.Code Ann. § 4–88–101 *et seq.*; and Count III—Unjust Enrichment. Compl. ¶¶ 42–74.

Plaintiff proposes a nationwide class that consists of "[a]ll persons and entities residing in the United States who purchased a 42″ and 46″ Sanyo plasma television" and an Arkansas subclass of "[a]ll persons and entities residing in the State of Arkansas who purchased a 42″ and 46″ Sanyo plasma television." Compl. ¶ 24. Plaintiff claims that the nationwide class and Arkansas subclass "are both composed of, at least, thousands of people who purchased 42″ and 46″ Sanyo televisions, with the same common defect that causes similar characteristics and symptoms." Compl. at ¶ 25.

## II.

Defendants move for judgment on the pleadings under Fed.R.Civ.P. 12(c) on the following grounds: (1) Defendants properly disclaimed any implied warranty of merchantability and, separately, Plaintiff has not alleged that she provided any of the Defendants with the required pre-suit notice; (2) Plaintiff's ADTPA claim fails as she does not allege reasonable reliance and injury flowing from Defendants' allegedly deceptive conduct and she also does not plead her ADTPA claim with particularity as required by Fed.R.Civ.P 9(b); (3) Plaintiff's unjust enrichment claim fails as a matter of law because an express contract—a written warranty—existed; and (4) even if any of Plaintiff's individual claims survive, her class allegations should not.

### A.

■ A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is reviewed under the same standards used to review a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir.

<hr>

**2.** Plaintiff moved to remand, arguing there was no CAFA jurisdiction. By Order entered March 27, 2013, the Court denied Plaintiff's motion. See *Jarrett v. Panasonic Corporation of North America*, 934 F.Supp.2d 1020 (E.D.Ark.2013).

2009) (citation omitted). Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Id.* The Court is required to accept as true all factual allegations set out in the complaint and to construe the complaint in the light most favorable to the plaintiff, drawing all inferences in her favor. *Id.* However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). A well-pleaded complaint may proceed even if it appears that actual proof of those facts is improbable and that recovery is very remote and unlikely. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. A complaint cannot, however, simply leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Id.* at 561, 127 S.Ct. 1955. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)).[3]

## B.

### 1.

The Court first addresses Defendants' argument that they properly disclaimed any implied warranty of merchantability. This argument has subparts which the Court will address in turn.

#### i.

Under the Arkansas Uniform Commercial Code (Arkansas UCC), a seller may exclude implied warranties of merchantability provided that the disclaimer mentions "merchantability" and is conspicuous. Ark.Code Ann. §§ 4–2–314 and 4–2–316. See also *Perez v. Volkswagen Group of America, Inc.,* No. 2:12–cv–02289, 2013 WL 1661434, *6 (W.D.Ark. April 17, 2013)

---

**3.** When ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(c), a district court generally may not consider materials outside the pleadings. *Noble Systems Corp. v. Alorica Central, LLC,* 543 F.3d 978, 982 (8th Cir.2008) (citation omitted). It may, however, consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings. *Id.* (quotation marks omitted). The Owner's Manuals for the identified television models are attached to Defendants' mo-

tion for judgment on the pleadings as exhibits A–D. Plaintiff does not dispute that the Court may consider the Owner's Manuals as they are referenced in the Complaint (¶ 36) and because the nature of the written warranty and the disclaimer are central to Plaintiff's breach of implied warranty of merchantability claim. Defendants state that they cannot attach any Owner's Manual for Plaintiff's alleged model—a 46″ Sanyo plasma television—because Sanyo never manufactured a 46″ plasma television.

("Arkansas law permits a merchant to limit an implied warranty of merchantability.") (citing Ark.Code Ann. §§ 4–2–314 and 4–2–316). Language is "conspicuous" if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Ark. Code Ann. § 4–1–201(b)(10). Conspicuous terms include "(A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size" and "(B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." Ark.Code Ann. § 4–1–201(b)(10)(A) and (B).

■ All of the television models identified in paragraph one of Plaintiff's Complaint (DP42740, DP42746, DP42647, and DP46849) came with an Owner's Manual which contained an express one-year limited warranty. All other warranties—including merchantability—were disclaimed by Sanyo in the Owner's Manuals as follows:

THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Owner's Manuals (Exs. A–D).

Plaintiff does not dispute, and the Court finds, that the disclaimer in Sanyo's Owner's Manuals mentions "merchantability" and is conspicuous in that it is prominently featured in the middle of the page in capital letters. Accordingly, Defendants are entitled to judgment on the pleadings as to Plaintiff's breach of implied warranty of merchantability claim against Sanyo.

■ The same is not true of Wal–Mart, however. In their reply brief, Defendants argue in a footnote that Wal–Mart, like Sanyo, effectively disclaimed all implied warranties by providing the buyer with the Sanyo express one-year limited warranty found within the Owner's Manual in the boxed product at the time of sale. The Court disagrees. "In the usual case, a distributor or dealer must make his own disclaimer to be free from implied warranty liability. He cannot rely on a disclaimer used by the manufacturer even though he passes that documentation on to the ultimate buyer." Barkley Clark & Christopher Smith, *The Law of Product Warranties* § 8:14[1] (2012). See also *Florists' Mut. Ins. v. Lewis Taylor Farms, Inc.*, No. 7:05–cv–50, 2008 WL 875493, *12 (M.D.Ga. March 27, 2008) ("a manufacturer's disclaimer of warranties does not run with the goods so as to protect any subsequent seller of them; thus, each subsequent seller must make his own independent disclaimer in order to be protected from warranty liability") (quoting 63 Am. Jur. Prods. L. § 801). Defendants cite no Arkansas law to the contrary. The one case cited by Defendants, *Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835 (Colo.App. 1990), is distinguishable. In that case, the Colorado Court of Appeals held that where the buyer knew the seller was the manufacturer's exclusive distributor and the buyer received the disclaimer directly from the seller and not from the manufacturer, the manufacturer's disclaimer became a part of the basis of the bargain between the buyer and the seller and therefore the seller was not required to restate the manufacturer's disclaimer in order to disclaim warranty liability. Here, in contrast, Defendants do not assert that Wal–Mart was Sanyo's exclusive distributor or that Plaintiff was aware of any such fact and they do not make any argument

concerning course of dealing, course of performance, or usage of trade. Defendants simply have not pled sufficient facts for the Court to determine that the commercial context in which the sales transaction between Plaintiff and Wal–Mart took place was such that Sanyo's disclaimer became a part of the basis of the bargain between Plaintiff and Wal–Mart. Accordingly, Defendants are not entitled to judgment on the pleadings as to Plaintiff's breach of implied warranty of merchantability claim against Wal–Mart.

ii.

In contesting Defendants' argument that they properly disclaimed any implied warranty of merchantability, Plaintiff, as previously noted, does not dispute that Sanyo's disclaimer of implied warranties failed to mention "merchantability" or was not conspicuous. Rather, Plaintiff argues for the first time that Defendants' motion for judgment on the pleadings is premature because the disclaimer may be unconscionable and unconscionability raises a fact question. The "doctrine of unconscionability has both procedural and substantive elements. Procedural unconscionability deals with the manner in which a contract was entered into; substantive unconscionability, on the other hand, looks to the terms of the contract and whether they are harsh, one-sided, or oppressive." *Hughes v. Wet Seal Retail, Inc.*, No. 10–cv–05090, 2010 WL 4750216, *2 (W.D.Ark. Nov. 16, 2010) (internal quotations and citation omitted). Plaintiff must prove both procedural and substantive unconscionability for an agreement to be unenforceable. *Id.* Plaintiff's Complaint does not include specific allegations concerning unconscionability of the disclaimer of implied warranties and the Complaint makes no specific allegations concerning the one-year limited warranty she received from Defendants at the time of the television's purchase. Plaintiff does not dispute that the disclaimer complies with the Arkansas UCC and she has not pled facts suggesting that the disclaimer is nevertheless procedurally or substantively unconscionable. Merely raising the specter of unconscionability is not sufficient to defeat a motion for judgment on the pleadings. *Cf. White v. Volkswagen Group of America, Inc.*, No. 2:11–cv–02243, 2013 WL 685298, *4–*5 (W.D.Ark. Feb. 25, 2013) (granting motion to dismiss unconscionability claim where "vague claim, unsupported by any factual allegation" failed to meet the pleading standards set forth in *Twombly* and there was nothing facially unconscionable about warranty); *Ochman v. Wyoming Seminary*, No. 3:12–cv–88, 2012 WL 5987133, *5 (M.D.Pa. Nov. 29, 2012) (granting motion to dismiss claim of substantive unconscionability where claim was supported by conclusory statements instead of factual allegations); *Santos v. SANYO Mfg. Corp.*, Civil Action No. 12–11452, 2013 WL 1868268, *3–*4 (D.Mass. May 3, 2013) (granting motion to dismiss claim that warranty was unconscionable where amended complaint lacked factual support for such a claim); *Moulton v. LG Electronics USA, Inc.*, Civil Action No. 11–4073, 2012 WL 5555496, *3 (D.N.J. Nov. 14, 2012) (rejecting plaintiff's argument that determination of unconscionability was better suited for summary judgment and instead holding that the Supreme Court's pleading standards decision in *Iqbal* requires that claims of unconscionability be held at a higher level of scrutiny). Accordingly, Defendants are entitled to judgment on the pleadings with respect to any claim of unconscionability Plaintiff is asserting.

iii.

The Court now turns to the question of whether Plaintiff provided any

of the Defendants with the required pre-suit notice. The Arkansas UCC requires that the buyer notify the seller of breach or be barred from any remedy. Ark.Code. Ann. § 4–2–607(3)(a). "[T]he giving of reasonable notice is a condition precedent to recovery" under the Arkansas UCC and "the giving of notice must be alleged in the complaint in order to state a cause of action." *Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 797, 888 S.W.2d 303, 305 (1994) (citation omitted). See also *Stalter v. Coca–Cola Bottling Co.*, 282 Ark. 443, 450, 669 S.W.2d 460, 464 (1984) ("In order to state a cause of action for breach of implied warranty, an allegation of notice of the defect to the seller must be pleaded."). The requirements of notification are not stringent, *Cotner v. International Harvester Co.*, 260 Ark. 885, 889, 545 S.W.2d 627, 630 (1977), and are to be liberally construed. *Wilson v. Marquette Electronics, Inc.*, 630 F.2d 575, 584 (8th Cir.1980). No particular form of notice is required and the notice need not be in writing. *Jackson v. Swift–Eckrich*, 830 F.Supp. 486, 491 (W.D.Ark.1993) (citation omitted). Notice need only be sufficient to inform the seller that the transaction is claimed to involve a breach and thus to open the way for negotiation of a normal settlement. *Cotner*, 260 Ark. at 889, 545 S.W.2d at 630. It must, however, be sufficient to let the seller know that the transaction is still troublesome and must be watched. *Id.* (citation omitted). Ordinarily, the sufficiency of notice is a question of fact for the jury based upon the circumstances. *Id.*

■■■ In her Complaint, Plaintiff alleges that after her 46″ Sanyo plasma television began to malfunction, she "sought to return, exchange or have repaired her 46″ plasma television," that certain "members of the Class (such as the Plaintiff) … called Sanyo to complain about the defec-

tive nature of their 42″ and 46″ Sanyo plasma televisions," and that "members of the Class (such as Plaintiff) … called or otherwise complained to Wal–Mart about the defective nature of their 42″ and 46″ Sanyo plasma televisions." Compl. ¶¶ 18–19, 43(c), 45. Although it is a moot point as to Sanyo (the Court having found that Sanyo properly disclaimed any implied warranty of merchantability), the Court finds that it is a question of fact whether Plaintiff seeking to return, exchange, or have repaired her 46″ plasma television and her and other putative class members calling Sanyo and Wal–Mart to complain about the allegedly defective nature of their 42″ and 46″ Sanyo plasma televisions was sufficient pre-suit notice as required by Ark.Code. Ann. § 4–2–607(3)(a). *Cf. Industrial Electronic Supply, Inc. v. Lytle Manufacturing, L.L.C.*, 94 Ark.App. 81, 85–86, 226 S.W.3d 1, 5 (2006) (telephone calls from buyer to sales representative of seller about product not being what was ordered could be considered notice). Accordingly, the Court denies Defendants' motion for judgment on the pleadings on the adequacy of Plaintiff's pre-suit notice.

iv.

In sum, the Court grants Defendants' motion for judgment on the pleadings on Plaintiff's breach of implied warranty of merchantability claim against Sanyo but denies Defendants' motion as to Plaintiff's breach of implied warranty of merchantability claim against Wal–Mart.

2.

The Court now turns to Plaintiff's ADTPA claim. The ADTPA prohibits persons from "knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods

are original or new or of a particular standard, quality, grade, style, or model." Ark.Code Ann § 4–88–107(a)(1). See Compl. ¶ 57. In addition, "[w]hen utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation," the ADTPA prohibits "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark.Code Ann. § 4–88–108(1) & (2).[4] See Compl. ¶ 58. The ADTPA provides that "[a]ny person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action...." Ark.Code Ann. § 4–88–113(f).

### i.

■ Defendants argue that Plaintiff's ADTPA claim fails as she does not allege reasonable reliance and injury flowing from Defendants' allegedly deceptive conduct. Plaintiff does not specifically address Defendants' argument concerning her allegations regarding reliance and injury and the Court finds that those allegations are not sufficiently pled as she fails to allege any specific advertising that she saw or heard or how she relied on such advertising in deciding to purchase her television. Cf. White, 2013 WL 685298, *7 (in dismissing the ADTPA claim, the court found, inter alia, that plaintiff failed to plead reliance: "Beginning with [plaintiff's] false representations and false advertising claims, the Court observes that at no point in the Amended Complaint does [plaintiff] specify what false representations were affirmatively made to her by Defendant, nor does she state that she relied on particular false representations

in making her decision to purchase her vehicle. These facts are fatal to [plaintiff's] ADTPA claims.") (emphasis in original).

### ii.

■ Defendants also argue that Plaintiff does not plead her ADTPA claim with particularity as required by Fed. R.Civ.P 9(b). Rule 9(b) requires any plaintiff claiming fraud to plead with particularity the circumstances constituting fraud. Perez, 2013 WL 1661434, *8. Rule 9(b)'s pleading standard applies with equal force to state consumer fraud statutes as to common law fraud claims. Id. (citations omitted). "This pleading standard 'demands a higher degree of notice than that required for other claims. The claim must identify who, what, where, when, and how.'" Id. (quoting United States ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir.2003)). "The pleading must discuss 'the time, place[,] and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" McNeil v. Metropolitan Nat. Bank, No. 4:13cv00076, 2013 WL 2099815, *2 (E.D.Ark. May 14, 2013) (quoting Schaller Tel. Co. v. Golden Sky Sys., 298 F.3d 736, 746 (8th Cir.2002)). "Conclusory allegations of fraud and deception are insufficient." Id. " 'Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading.'" Perez, 2013 WL 1661434, *8 (quoting Costner, 317 F.3d at 888). "The reason for requiring particularity in pleading for fraud claims, such as those established under the ADTPA, is 'to enable the defendant to respond specifical-

---

**4.** Claims pursuant to Ark.Code Ann. § 4–88–108(2) do not require knowing or intentional deception. Curtis Lumber Co., Inc. v. Louisi- ana Pacific Corp., 618 F.3d 762, 777 (8th Cir.2010).

ly and quickly to the potentially damaging allegations.'" *Id.*

In support of her ADTPA claim, Plaintiff notes that she alleges the following: the existence of a defect; that Defendants were aware of this defect; that the existence of the defect was a material fact; that the failure to disclose the existence of this defect would tend to cause consumers to purchase the televisions; that Defendants failed to disclose the defect with the intent that consumers would rely upon the omission and purchase the televisions; and that Plaintiff and the class have suffered injury in that they have been forced to incur repairs or purchased televisions they would not otherwise have purchased. Plaintiff argues that "[t]he clear gravamen of [her] Complaint is that Defendants were selling televisions that were known to be defective, that Defendants failed to disclose this fact, that Plaintiff and the class purchased these televisions without knowing of their defective nature, and were damaged."

Whatever the gravamen of Plaintiff's Complaint may be, it is clear that Plaintiff's Complaint does not plead facts demonstrating each Defendant's respective knowledge and purposeful concealment of any alleged defects, who knew about them and when they occurred, where the omissions should have appeared, or how the allegedly omitted facts made any representations misleading. See *United States ex rel. Riley v. St. Luke's Episcopal Hospital,* 355 F.3d 370, 381 (5th Cir.2004) (in actions involving alleged omissions, "Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and

the way in which the omitted facts made the representations misleading.") (quoting 2 James W. Moore et al., *Moores Federal Practice* § 9.03[1][b], at 9–18 (3d ed.2003)). Rather, Plaintiff's Complaint only alleges that Defendants violated the ADTPA by "concealing, suppressing, or omitting material facts in connection with the sale or advertisement of the 42″ and 46″ Sanyo plasma televisions. . . ." Compl. ¶ 59. Such allegations are conclusory and do not satisfy Rule 9(b)'s pleading requirements. *Cf. Santos,* 2013 WL 1868268, *6 (plaintiff did not satisfy Rule 9(b) where he failed to allege specific facts that made it reasonable to believe that Sanyo knew that a statement or omission was materially false or misleading); *Moulton v. LG Electronics USA, Inc.,* Civil Action No. 11–4073, 2012 WL 3598760, *3 (D.N.J. Aug. 21, 2012) (in finding that Plaintiff failed to meet the pleading requirements of Rule 9(b), court noted that "Plaintiff does not plead dates, times or places of the alleged fraud. Plaintiffs further do not plead the circumstances surrounding how LG came to know of the alleged defects and [ ] affirmatively concealed them."); *Hughes v. Panasonic Consumer Electronics Co.,* Civil Action No. 10–846, 2011 WL 2976839, 14–*15 (D.N.J. July 21, 2011) (conclusory allegations of television manufacturer's knowledge and failure to disclose "fail to satisfy the Rule 9(b) heightened pleading standard" or under *Iqbal* ).[5]

iii.

In sum, Plaintiff's ADTPA claim fails as she does not allege reasonable reliance and injury flowing from Defendants' allegedly deceptive conduct and she fails to plead her ADTPA claim with particularity as

---

5. Plaintiff's reliance on *Rush v. Whirlpool Corp.,* No. 07–2022, 2008 WL 509562, *3 (W.D.Ark. Feb. 22, 2008), which held that allegations similar to Plaintiff's were sufficient to state claims under the ADTPA, is misplaced as that case apparently did not involve a Rule 9(b) challenge and the Court in any case did not discuss Rule 9(b)'s pleading requirements.

required by Fed.R.Civ.P. 9(b). Accordingly, the Court grants Defendants' motion for judgment on the pleadings on Plaintiff's ADTPA claim.

### 3.

The Court now turns to Plaintiff's unjust enrichment claim. Under Arkansas law, the doctrine of unjust enrichment does not apply when there is a valid, legal, and binding contract. *Varner v. Peterson Farms*, 371 F.3d 1011, 1018 (8th Cir.2004). Here, Plaintiff does not dispute that there was a valid and binding express one-year limited warranty contract as to Sanyo. Accordingly, the Court grants Defendants' motion for judgment on the pleadings on Plaintiff's unjust enrichment claim against Sanyo. *Cf. Peace v. Bank of America*, No. 4:10cv00058, 2010 WL 996005, *3 (E.D.Ark. March 17, 2010) (noting that under Arkansas law, the doctrine of unjust enrichment has no application when an express, written contract exists and dismissing Plaintiff's unjust enrichment claim pursuant to Fed.R.Civ.P. 12(b)(6) as there was a remedy available in contract); *Humphrey v. Electrolux Home Products Inc.*, No. 4:12–cv–157, 2012 WL 3257664, *3 (E.D.Ark. Aug. 9, 2012) (finding Plaintiff's unjust enrichment claim failed as a matter of law where the parties agreed she received a warranty and she sought to recover on it).

However, the Court will allow Plaintiff's unjust enrichment claim against Wal–Mart to proceed at this time. Defendants do not assert that Plaintiff received an express warranty from Wal–Mart and the Court has determined on this record that Wal–Mart's passing Sanyo's express warranty with its disclaimer on to Plaintiff did not allow Wal–Mart to have benefit of Sanyo's disclaimer. Defendants do not set forth any authority suggesting that Plaintiff may not assert an unjust enrichment claim against Wal–Mart in these circumstances.

### 4.

The Court now turns to Plaintiff's class allegations. Under Fed.R.Civ.P. 23(a), the party seeking class certification must demonstrate, first, that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[6] In addition to satisfying Rule 23(a)'s requirements, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. ——, ——, 131 S.Ct. 2541, 2548, 180 L.Ed.2d 374 (2011).

Plaintiff does not specify the provision of Rule 23(b) upon which she is relying but she does not dispute Defendants' assertion that the applicable provision in this action is Rule 23(b)(3), which applies when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court agrees that Rule 23(b)(3) is the applicable provision as Plaintiff asserts in her Complaint that "[t]here are questions of law and fact which are common to the Class and which predominate over questions affecting any individual class member," and that "[a] class action is superior to other methods

---

**6.** Once removal under CAFA takes place, Fed.R.Civ.P. 23 governs certification. *Smith v.* *Bayer Corp.*, —— U.S. ——, ——, 131 S.Ct. 2368, 2382, 180 L.Ed.2d 341 (2011).

for the fair and efficient adjudication of the claims herein asserted...." Compl. ¶¶ 31–32. That established, the Court now addresses Defendants' argument that Plaintiff's Complaint demonstrates she cannot satisfy the requirements of either Rule 23(a)(2) or Rule 23(b)(3).

i.

■ When a putative class consists of persons from numerous states pursuing common law claims, as is the case with Plaintiff's nationwide class, a court must conduct a choice-of-law analysis before considering the requirements of Rule 23. *Tyler v. Alltel Corporation,* 265 F.R.D. 415, 421 (E.D.Ark.2010). "[I]n nationwide class actions, choice-of-law constraints are constitutionally mandated because a party has a right to have her claims governed by the state law applicable to her particular case." *Id.* (quoting *In re Prempro,* 230 F.R.D. 555, 561–562 (E.D.Ark.2005)). Plaintiff "must show, prior to class certification, that the differences in state laws ... are nonmaterial" as to her Rule 23(b)(3) class. *Id.*

■ Plaintiff argues that she seeks to impose the law of a single state—Arkansas—to the nationwide class and that application of a single state's law to a nationwide class of consumers is constitutionally permissible in these circumstances. In making this argument, Plaintiff does not dispute that the laws of the various states in which putative class members reside differ materially with respect to all of her claims. *Cf. Powers v. Lycoming Engines,* 272 F.R.D. 414, 425–426 (E.D.Pa.20011) (common questions of law or fact did not predominate in actions against engine manufacturer for breach of implied warranty of merchantability and thus certification of nationwide class was not warranted; there were various differences among states' laws affecting entitlement to disclaim warranty, extent of warranty, limita-

tion of liability defenses, and damages, and there were multiple defenses, such as assumption of risk, hindrance of contract, misuse of product, and validity of warnings, that existed in some states and not others); *In re St. Jude Medical, Inc.,* 425 F.3d 1116, 1120 (8th Cir.2005) ("[s]tate consumer protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in different states with different rules") (quoting *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 (7th Cir. 2002)); *Thompson v. Bayer Corp.,* No. 07–00017, 2009 WL 362982, *4 (E.D.Ark. Feb. 12, 2009) (finding after "an extensive review of the law ... that the states' different approaches to, or elements of, unjust enrichment are significant"). The Court agrees that the laws of the various states in which putative class members reside differ materially with respect to all of Plaintiff's claims. Therefore, the Court must decide whether Arkansas law would apply to the claims of all the putative class members, including those who reside in states other than Arkansas. *Tyler,* 265 F.R.D. at 423.

■ In *Tyler,* the plaintiff asserted ADTPA and unjust enrichment claims and argued that Arkansas law should apply to a nationwide class of persons who were charged an early termination disconnect fee. After determining that both the consumer protection statutes and the law of unjust enrichment of the various states differed, the Court applied the choice-of law provision in the contract, Arkansas's general contract choice-of-law principles, and Arkansas's choice-of-law tort principles, and concluded that regardless of which choice-of-law principle governs, Arkansas law could not be applied to the claims of class members who resided outside of Arkansas. 265 F.R.D. at 427. Rather, the court concluded that "the law

of each state where the consumer transaction occurred, or where the consumer lives, should govern that transaction." *Id.*[7] In so concluding, the court rejected the same argument that Plaintiff is making in this action—that Defendants maintain headquarters in Arkansas and the fraudulent conduct emanated from the Defendants' headquarters—finding that "any failure to disclose or any fraudulent conduct nevertheless occurred at the point of sale." *Id.* at 426.

■ The parties do not specifically address whether Plaintiff's claims sound in contract or tort.[8] Regardless, having considered Arkansas's general contract choice-of-law principles and Arkansas's tort choice-of-law principles, including a combination of *lex loci delicti* and the five Leflar factors, the Court, for the reasons stated in *Tyler*, concludes that the law of the state where each consumer transaction occurred or each consumer lives should govern that transaction and that Arkansas law will not apply to transactions between Defendants and customers in other states. Thus, certifying the nationwide class proposed by Plaintiff would require the application of the laws of up to fifty states, which would render this action unmanageable. See *id.* at 428 ("Applying twenty-five states' laws to Tyler's class, even if divided into twenty-five different subclasses, would present the Court with an unmanageable situation at trial."). As in *Tyler*, the out-come-determinative conflicts between the various states' implied warranty of merchantability, consumer protection, and unjust enrichment laws are fatal to Plaintiff's class allegations. *Id.* at 429. Plaintiff cannot satisfy either Rule 23(a)(2)'s requirement that "there are questions of law or fact common to the class" or Rule 23(b)(3)'s "far more demanding" requirement that common issues predominate over individual ones. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

ii.

■ Even if Arkansas law were to apply to Plaintiff's claims, there are individu-

---

**7.** The court noted that "[w]hether Tyler's claims sound in contract or tort, the result is the same. If her claims sound in contract, then both the choice-of-law provision in the contract and general contract choice-of-law principles require that consumer transactions be governed by the law of the state in which the transaction occurred or the state in which the consumer's billing address is located. If her claims sound in tort, then under Arkansas's tort choice-of-law principles ... the laws of twenty-five different states would still apply because the claims arise out of consumer transactions that occurred in different states." *Id.* at 424.

**8.** Where there is no effective choice of law by the parties in a cause of action arising in contract, and none has been identified here, Arkansas courts employ the "most significant relationship" test to determine which state's laws to apply. *Tyler*, 265 F.R.D. at 424 (citation omitted). Under that test, a court must consider the nature and quantity of each state's 'contacts' with the transaction at issue. *Id.* The following factors are relevant: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* With respect to causes of action sounding in tort, Arkansas courts apply Professor Robert A. Leflar's five-factor approach to deciding tort choice-of-law questions. *Id.* at 425 (citations omitted). Those factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id.* "Arkansas law has not, however, altogether discarded the traditional approach of *lex loci delicti*, so a court 'must consider the *lex loci delicti* rule within the framework of the five Leflar factors.'" *Id.*

al issues of fact that make class certification for both her nationwide class and her Arkansas subclass inappropriate with all of her claims. In this respect, the Court notes that a breach of implied warranty of merchantability claim requires each class member to prove that the alleged unmerchantable condition was a proximate cause of her damages. *E.I. Du Pont de Nemours and Co. v. Dillaha*, 280 Ark. 477, 480, 659 S.W.2d 756, 758 (1983). Similarly, an ADTPA claim requires each class member to prove reliance on the allegedly fraudulent conduct and that such fraudulent conduct caused damage. See *White*, 2013 WL 685298, *8–*9. And, "Defendants' liability for unjust enrichment to a particular plaintiff depends on the factual circumstances of the particular purchase at issue" and "[t]his evidence will have to be proven on an individual basis in order for the individual plaintiff to recover." *Thompson v. Bayer Corp.*, No. 07–00017, 2009 WL 2424352, *3 (E.D.Ark. Aug. 6, 2009). As noted by Defendants, among the individual issues that likely will need to be addressed include the specific facts and circumstances surrounding each television purchase and use, including the performance, maintenance, and service history of every plasma television at issue; whether each putative class member was the original purchaser; the cause of each class member's television's alleged failure, including whether it was caused by the purchaser's negligence, improper maintenance, or misuse; the nature of the information provided to each purchaser at the point of purchase, what advertisement each class

member supposedly saw and allegedly relied upon, if any, and whether each class member relied on any representation or allegedly concealed information; whether each member of the class provided proper notice (which the Court has already determined is a fact question); whether members of the class made a warranty claim based on the alleged defects and what response they received; and whether each class member suffered injury or damage and, if so, the measure of those damages.[9] Thus, even if the laws of the various states with respect to Plaintiff's claims were identical and governed by uniform standards, which they are not, individual questions preclude class treatment for both her nationwide class and her Arkansas subclass. See *M.S. Wholesale Plumbing v. University Sports Publications Co., Inc.*, No. 4:07–cv–00730, 2008 U.S. Dist. LEXIS 124000, *11 (E.D.Ark. May 22, 2008) (in action alleging violations of the ADTPA, this Court found that "[e]ven if the consumer protection statutes [in various states] ... were identical and governed by uniform standards, which they are not, individual questions regarding causation and reliance preclude class treatment.").[10]

### iii.

In sum, Plaintiff's Complaint demonstrates she cannot satisfy the requirements of either Rule 23(a)(2) or Rule 23(b)(3) with respect to her proposed nationwide class and her proposed Arkansas subclass. Accordingly, the Court grants

9. Plaintiff states that "[t]he purchase price of the 42″ and 46″ Sanyo plasma televisions has been $900 to $1500" and that the defective televisions have "result[ed] in the need for costly repairs, ranging from $500 to $700 and more." Compl. ¶¶ 5, 8.

10. Even assuming that Plaintiffs are not required to show individual reliance or causa-

tion, Defendants are entitled to present evidence negating reliance and causation. *Id.* at *12–*13. " 'When such evidence is available, then it is highly relevant and probative on the question whether there is a causal nexus between the alleged misrepresentations and the injury.' " *Id.* (quoting *In re St. Jude Medical, Inc.*, 522 F.3d 836, 840 (8th Cir.2008)).

Defendants' motion for judgment on the pleadings on Plaintiff's class allegations.

## III.

One final matter concerns Plaintiff's argument that Defendants' motion for judgment on the pleadings is premature and that she should be permitted to conduct discovery. Plaintiff also requests leave to amend her Complaint should the Court find any of her claims deficient.

 In the context of class action litigation, a district court has the authority to issue an order requiring "that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed.R.Civ.P. 23(d)(1)(D). Pursuant to Rule 23(c)(1)(A), a court must determine whether to certify an action as a class action at "an early practicable time after a person sues or is sued as a class representative...." In some instances, a Court can decide on class certification before any discovery has yet taken place. *Hall v. Equity Nat. Life Ins. Co.*, 730 F.Supp.2d 936, 941 (E.D.Ark.2010) (citation omitted). Where class allegations are insufficient to support certification, a district court has the authority and discretion to strike those allegations under Rule 23(d)(1)(D). *Id.* at 941–942.

 " '[T]he plaintiff bears the burden of advancing a *prima facie* showing that ... discovery is likely to produce substantiation of the class allegations.' " *M.S. Wholesale Plumbing, Inc. v. University Sports Publications Co., Inc.*, No. 4:07–cv–00730, 2008 WL 90022, *6 n. 4 (E.D.Ark. Jan. 07, 2008) (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985)). Plaintiff does not identify what discovery she could obtain that would eliminate the individual issues of fact and law raised by her claims, and given the nationwide class and Arkansas subclass Plaintiff seeks to represent and the nature of her claims, she cannot satisfy her *prima facie* burden with either of her proposed classes. Thus, while Plaintiff may amend her Complaint with respect to her individual claims, any effort to amend her Complaint with respect to her class allegations would be futile as any such amendment would not survive a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c). See *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) (futility constitutes valid reason for denial of motion to amend). Accordingly, no discovery on Plaintiff's class allegations is necessary and Plaintiff may not amend her Complaint with respect to her class allegations. Should Plaintiff desire to amend her Complaint with respect to her individual claims (including those upon which the Court has granted judgment on the pleadings), she must do so within ten (10) days of the date of entry of this Opinion and Order.[11]

## IV.

For the foregoing reasons, the Court grants in part and denies in part Defen-

---

11. The Court's grant of judgment on the pleadings on Plaintiff's class allegations does not deprive the Court of CAFA jurisdiction. Although the Court determined in an earlier action that it lost subject jurisdiction under CAFA once it entered an order striking class allegations and accordingly dismissed the action, see *M.S. Wholesale Plumbing, Inc. v. University Sports Publications Co.*, No. 4:07–cv–00730, 2008 WL 5225823 (E.D.Ark. Dec. 10, 2008), it is now clear that CAFA jurisdiction continues despite a court's rejection of a plaintiff's class allegations. See *Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1182 n. 2 (8th Cir.2011) ("[CAFA] jurisdiction continued despite the district court's denial of Plaintiff's motion for class certification") (citing *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir.2010)).

dants' motion for judgment on the pleadings [doc. # 38].[12]

12. Defendants' motion to stay discovery and initial disclosure obligations pending resolution of dispositive motions [doc. # 43] is denied as moot.